UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE BAER

'08 CIV 5048

——————————————————— x
CITY OF ST. CLAIR SHORES POLICE AND :   Civil Action No.
FIRE RETIREMENT SYSTEM, Individually  :
and on Behalf of All Others Similarly Situated, :   CLASS ACTION COMPLAINT FOR
                                       :   VIOLATIONS OF FEDERAL SECURITIES
            Plaintiff,                 :   LAWS
                                       :
    vs.                                :   DEMAND FOR JURY TRIAL
                                       :
GILDAN ACTIVEWEAR INC., GLENN J.       :
CHAMANDY and LAURENCE G. SELLYN,       :
                                       :
            Defendants.                :
——————————————————— x



RECEIVED
JUN 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Gildan Activewear Inc. ("Gildan" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of Gildan between August 2, 2007 and April 29, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.    Plaintiff City of St. Clair Shores Police and Fire Retirement System, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Gildan at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant Gildan supplies activewear for the wholesale imprinted sportswear market in the United States and Canada, as well as in Europe. The Company sells T-shirts, sport shirts, and fleece in large quantities to wholesale distributors as undecorated blanks, which are subsequently decorated by screenprinters with designs and logos.

8.    (a)    Defendant Glenn J. Chamandy ("Chamandy") is, and was at all relevant times, Chief Executive Officer and President of Gildan.

(b)    Defendant Laurence G. Sellyn ("Sellyn") is, and was at all relevant times, Chief Financial and Administrative Officer and Executive Vice-President of Gildan.

(c)    Defendants Chamandy and Sellyn are collectively referred to herein as the "Individual Defendants."

9.    During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Gildan, were privy to confidential and proprietary information concerning Gildan, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Gildan, as discussed in detail below. Because of their positions with Gildan, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

- 2 -

knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.    The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Gildan's business.

11.    The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases, alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Gildan's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Gildan's common stock would be based

- 3 -

upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct, which operated as a fraud or deceit on purchasers of Gildan common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Gildan's business, operations, management and the intrinsic value of Gildan securities; (ii) allowed the Individual Defendants and another Company insider to collectively sell more than 2.5 million shares of their personally-held Gildan common stock for gross proceeds in excess of $96 million; and (iii) caused Plaintiff and members of the Class (defined below) to purchase Gildan's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Gildan between August 2, 2007 and April 29, 2008, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Gildan common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Gildan or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

- 4 -

16.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Gildan;

(c)    whether the price of Gildan common stock was artificially inflated during the Class Period; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### SUBSTANTIVE ALLEGATIONS

20.    Defendant Gildan describes itself as a "vertically-integrated marketer and manufacturer of quality branded basic apparel. The Company is the leading supplier of activewear

for the wholesale imprinted sportswear market in the U.S. and Canada, and also a leading supplier to this market in Europe. The Company sells T-shirts, sport shirts and fleece in large quantities to wholesale distributors as undecorated 'blanks,' which are subsequently decorated by screenprinters with designs and logos."

21.    The Class Period begins on August 2, 2007. On that date, Gildan issued a press release announcing its fiscal third quarter 2007 results and its initial earnings guidance for fiscal 2008. With regard to the Company's guidance, the press release stated, in pertinent part, as follows:

EPS and Capital Expenditure Guidance for Full Year Fiscal 2007 and 2008

The Company expects that the impact of the Kentucky Derby Hosiery acquisition will continue to be slightly dilutive to EPS in the fourth quarter of fiscal 2007. Consequently, the Company now expects adjusted diluted EPS before restructuring charges for the fourth quarter to be approximately U.S. $0.38, up 27% from the corresponding quarter of fiscal 2006, and U.S. $0.01 per share below its previous EPS guidance range for the quarter. Adjusted diluted EPS before restructuring charges for the full fiscal year is still projected to be approximately U.S. $1.30 per share, up 24% compared to fiscal 2006.

**The Company has initiated its EPS guidance for fiscal 2008 with a range of U.S. $1.80 - U.S. $1.85 per share on a diluted basis, up approximately 39% - 42% from fiscal 2007.** The projected growth in EPS in fiscal 2008 is driven primarily by the impact of relocating the Canadian textile operations and completing the ramp-up of the Company's offshore textile facilities in Honduras and the Dominican Republic, unit volume growth in activewear, and the expected EPS accretion from having completed the integration of Kentucky Derby Hosiery. [Emphasis added.]

22.    On September 18, 2007, Gildan issued a press release announcing that it entered into an agreement to purchase V.I. Prewett & Son, Inc. ("Prewett"), a large U.S. private label supplier of basic family socks to U.S. mass-market retailers. Moreover, the Company increased its fiscal 2008 earnings guidance. In that regard, the press release stated, in pertinent part, as follows:

Prewett currently has annualized sales of approximately U.S. $190 million. The acquisition of Prewett is expected to be accretive to Gildan's EPS in fiscal 2008, and to increase annual EPS by approximately U.S. $0.20 per share after the acquisition integration is complete. Based on the projected first year accretion from the Prewett acquisition, and a U.S. $7 million further incremental capacity expansion of Gildan's first Honduran sock manufacturing facility, Gildan now expects to achieve or exceed

the high end of its previously announced earnings guidance range for fiscal 2008 of U.S. $1.80-$1.85 per share, representing an increase of over 40% compared with the Company's fiscal 2007 projected EPS of approximately U.S. $1.30 before restructuring charges.

23.    Upon this news, shares of the Company's stock rose $4.25 per share, or 13%, to close at $35.92 per share, on heavy trading volume.

24.    On December 6, 2007, Gildan issued a press release announcing its financial results for the fiscal fourth quarter and year end of 2007, the period ended September 30, 2007. For the quarter, the Company reported sales of $254.9 million, net earnings of $40.9 million and diluted EPS of U.S. $0.34, after recording a restructuring charge of $4.9 million after-tax or $0.04 per share, which was primarily related to the previously announced restructuring of the Company's Canadian, Mexican and U.S. manufacturing facilities. With regard to the Company's guidance, the press release stated, in pertinent part, as follows:

EPS, Capital Expenditure and Free Cash Flow Guidance for Fiscal 2008

**The Company has reconfirmed its previous EPS guidance for fiscal 2008 of U.S. $1.85 per share**, up 43.4% from U.S. $1.29 per share, before restructuring and other charges, in fiscal 2007. Although a selling price increase in the screenprint channel is currently being successfully implemented, the Company believes that it is premature to increase its fiscal 2008 EPS guidance, partially due to inflationary pressures on energy, dye and chemicals costs and also due to the overall uncertainty at this stage of the economic and market outlook for 2008. The Company is projecting EPS for the first quarter of fiscal 2008 of approximately U.S. $0.21 per share, up 50.0% from U.S. $0.14 in the first quarter of fiscal 2007. Projected results for the first quarter include the impact of the consumption of high-cost sock inventories produced during fiscal 2007, as well as the consumption of textiles produced in Canada prior to the closure of the Company's remaining Canadian textile facilities.

The Company is now projecting capital expenditures of approximately U.S. $140 million in fiscal 2008, compared with its previous estimate of U.S. $155 million. The reduction in projected capital expenditures is primarily due to delays in the timing of a major energy cost reduction project in Honduras, combined with below budget spending for the new activewear facility currently being ramped up to full capacity in Honduras. The Company is completing the ramp-up of its new sock and textile facilities in Honduras and intends to proceed with the construction of a previously announced second sock factory. The Company is also evaluating the

- 7 -

timing and geographical location for future textile capacity expansion, to support its ongoing growth initiatives in the U.S. mass-market retail and international markets.

Including a projected reduction in inventories, the Company expects to generate free cash flow in fiscal 2008 in excess of U.S. $150 million, before taking account of its investment in the acquisition of V.I. Prewett & Son, Inc. [Emphasis added.]

25.     On January 15, 2008, Gildan issued a press release announcing that Defendant Sellyn will present an overview of the Company's business plans and financial objectives at the Tenth Annual ICR XChange Conference. In that regard, the press release stated, in pertinent part, as follows:

At the conference, **the Company will reiterate that it continues to be comfortable with its most recent EPS guidance,** provided on December 6, 2007, of approximately U.S. $1.85 for fiscal 2008, **and confirm that it expects to achieve or exceed its EPS guidance of U.S. $0.21 for the first quarter of fiscal 2008.** [Emphasis added.]

26.     On January 30, 2008, Gildan issued a press release announcing its financial results for the fiscal first quarter of 2008, the period ended December 30, 2007. For the quarter, the Company reported sales of $250.5 million, net earnings of $27.5 million and diluted EPS of $0.23. With regard to the Company's guidance, the press release stated, in pertinent part, as follows:

Outlook

**The Company has increased its EPS guidance for the full year to a range of U.S. $1.85-U.S. $1.90,** up 43%-47% from adjusted net earnings of U.S. $1.29 per share in fiscal 2007.

The impact of projected more favourable pricing in the wholesale channel, and of the Company's more favourable performance in the first quarter, is projected to be partially offset by a higher than previously anticipated income tax rate for the year, as well as the assumed impact of a proposed U.S. tariff on sock imports from Honduras in the third and fourth quarters.

The projected increase in EPS compared to fiscal 2007 reflects 14% projected growth in unit sales volumes for activewear and underwear, projected higher selling prices for activewear, projected manufacturing efficiencies as a result of completing the closures of the Company's Canadian textile manufacturing operations and consolidating activewear manufacturing offshore, and the impact of integrating the Company's sock acquisitions. The positive impact of these factors in fiscal 2008 is

assumed to be partially offset by higher selling, general and administrative and depreciation expenses, projected increases in cotton, energy and transportation costs, and a higher effective income tax rate including the non-recurrence of income tax recoveries recorded in fiscal 2007.

The Company also indicated that it expects to report EPS of approximately U.S. $0.42 in the second quarter of the fiscal year, up 35.5% from adjusted EPS of U.S. $0.31 in the second quarter of fiscal 2007. [Emphasis added.]

27.     The statements referenced above in ¶¶21, 22, 24-26 were materially false and misleading when made because they misrepresented and failed to disclose:

(a)     that sales of Gildan's activewear were performing below internal expectations as a result of a shortfall in production from its Dominican Republic textile facility;

(b)     that Gildan was failing to timely write-down an impairment in the value of its inventories, thereby materially overstating its financial results; and

(c)     as a result of the foregoing, Defendants had no reasonable basis for their earnings guidance for fiscal 2008 and other positive statements about the Company and its business.

28.     Then, on April 29, 2008, Gildan issued a press release announcing that it was reducing its Fiscal 2008 EPS guidance. Specifically, the Company reduced its EPS guidance from $0.42 per share for the second quarter to $0.35 per share for its second quarter and reduce its EPS guidance from a range of $1.85-$1.90 per share for the full 2008 fiscal year to a range of $1.45-$1.50 per share. In that regard, the press release stated, in pertinent part, as follows:

The lower than anticipated growth in EPS in the second fiscal quarter, compared to the Company's previous EPS guidance, is primarily due to **lower than projected unit sales growth in activewear as a result of a shortfall in production for the Dominican Republic textile facility, a write-down of inventories of discontinued retail product-lines pursuant to the rationalization of Gildan's product-mix within the sock category, and additional costs incurred to service mass-market retailers during the integration of retail information systems.** These unfavourable variances were partially offset by more favourable activewear product-mix and lower than anticipated promotional discounts in the U.S. wholesale distributor channel.

- 9 -

The lower than anticipated production in the Dominican Republic textile facility will continue to prevent the Company from capitalizing on strong sales demand for its products in the second half of the fiscal year, in particular during the peak summer selling season for T-shirts in the third fiscal quarter, and also **result in higher than projected manufacturing costs and supply chain inefficiencies.** In addition, the Company expects to be negatively impacted by higher than projected increases in freight and energy costs in the second half of the fiscal year. These factors are expected to be partially moderated by the impact of assumed more favourable selling prices in the U.S. screenprint channel in the third and fourth fiscal quarters, as a result of a recently announced selling price increase. [Emphasis added.]

29.    Upon this news, shares of the Company's stock fell $10.99 per share, or 30%, to close at $24.93 per share, on heavy trading volume.

30.    The markets for Gildan common stock were open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Gildan common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Gildan common stock relying upon the integrity of the market price of Gildan common stock and market information relating to Gildan, and have been damaged thereby.

31.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Gildan common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

32.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading

statements about Gildan's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Gildan and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

33.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Gildan, their control over, and/or receipt and/or modification of Gildan's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Gildan, participated in the fraudulent scheme alleged herein.

34.    Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and another Company insider to collectively sell more than 2.5 million shares of their personally-held Gildan common stock for gross proceeds in excess of $96 million. The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| GLENN J CHAMANDY | 8/9/07 | 35,600 | $36.07 | $1,284,092 |
| | 8/10/07 | 63,500 | $36.00 | $2,286,000 |
| | 9/4/07 | 235,700 | $32.51 | $7,662,607 |
| | 9/5/07 | 300 | $32.50 | $9,750 |
| | 9/6/07 | 800 | $32.50 | $26,000 |
| | 9/11/07 | 63,200 | $32.61 | $2,060,952 |
| | 9/18/07 | 52,100 | $36.00 | $1,875,600 |
| | 9/19/07 | 129,800 | $36.03 | $4,676,694 |
| | 9/20/07 | 345,362 | $36.11 | $12,471,022 |
| | 9/21/07 | 115,500 | $36.47 | $4,212,285 |
| | 10/1/07 | 79,773 | $40.08 | $3,197,302 |
| | 10/3/07 | 62,000 | $39.52 | $2,450,240 |
| | 10/4/07 | 62,100 | $38.19 | $2,371,599 |
| | 10/8/07 | 65,727 | $39.41 | $2,590,301 |
| | 10/9/07 | 113,900 | $39.84 | $4,537,776 |
| | 10/10/07 | 222,679 | $39.78 | $8,858,171 |
| | 11/5/07 | 225,000 | $42.06 | $9,463,500 |
| | 11/6/07 | 93,883 | $42.49 | $3,989,089 |
| | 11/12/07 | 125,000 | $40.12 | $5,015,000 |
| | 11/13/07 | 125,000 | $40.06 | $5,007,500 |
| | 11/14/07 | 129,955 | $41.75 | $5,425,621 |
| | 11/19/07 | 127,511 | $39.85 | $5,081,313 |
| | 12/5/07 | 18,910 | $37.81 | $714,987 |
| | | 2,493,300 | | $95,267,401 |
| | | | | |
| | | | | |
| LAURENCE G SELLYN | 12/20/07 | 16,000 | $40.13 | $642,080 |
| | 12/20/07 | 1,200 | $40.51 | $48,612 |
| | 12/20/07 | 800 | $40.42 | $32,336 |
| | 12/21/07 | 1,200 | $39.90 | $47,880 |
| | 12/21/07 | 500 | $40.00 | $20,000 |
| | 12/21/07 | 300 | $39.93 | $11,979 |
| | | 20,000 | | $802,887 |
| | | | | |
| | | | | |
| JOHN MARTIN | 2/14/08 | 2,200 | $39.59 | $87,098 |
| | 2/14/08 | 2,000 | $39.63 | $79,260 |
| | 2/14/08 | 1,800 | $39.45 | $71,010 |
| | 2/14/08 | 1,000 | $39.40 | $39,400 |
| | 2/14/08 | 1,000 | $39.56 | $39,560 |
| | 2/14/08 | 1,000 | $39.49 | $39,490 |
| | 2/14/08 | 1,000 | $39.62 | $39,620 |
| | | 10,000 | | $395,438 |
| | | | | |
| Grand Total: | | 2,523,300 | | $96,465,726 |

**Loss Causation/Economic Loss**

35.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of Gildan common

stock and operated as a fraud or deceit on Class Period purchasers of Gildan common stock by failing to disclose that sales of Gildan's activewear were performing below internal expectations as a result of a shortfall in production from its Dominican Republic textile facility and that Gildan was failing to timely write-down an impairment in the value of its inventories. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Gildan common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Gildan common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

36.     By failing to disclose that sales of Gildan's activewear were performing below internal expectations as a result of a shortfall in production from its Dominican Republic textile facility and that Gildan was failing to timely write-down an impairment in the value of its inventories, among other things, Defendants presented a misleading picture of Gildan's business and prospects. Defendants' false and misleading statements had the intended effect and caused Gildan common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $45.17 per share on October 30, 2007.

37.     As a direct result of Defendants' disclosures on April 29, 2008, the price of Gildan common stock fell precipitously, falling $10.99 per share, or 30%. These disclosures removed the inflation from the price of Gildan common stock, causing real economic loss to investors who had purchased Gildan common stock during the Class Period.

38.     The precipitous decline in the price of Gildan common stock after these disclosures came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in Gildan common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by

- 13 -

changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Gildan common stock and the subsequent significant decline in the value of Gildan common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

39.    At all relevant times, the market for Gildan common stock was an efficient market for the following reasons, among others:

(a)    Gildan common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    as a regulated issuer, Gildan filed periodic public reports with the SEC and the NYSE;

(c)    Gildan regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Gildan was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Gildan common stock promptly digested current information regarding Gildan from all publicly available sources and reflected such

information in the prices of the stock. Under these circumstances, all purchasers of Gildan common stock during the Class Period suffered similar injury through their purchase of Gildan common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Gildan who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

45.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Gildan common stock. Plaintiff and the Class would not have purchased Gildan common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

46.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Gildan common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    The Individual Defendants acted as controlling persons of Gildan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Gildan, and their ownership of Gildan stock, the Individual Defendants had the power and authority to cause Gildan to engage in the wrongful conduct complained of herein. By

reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: June 2, 2008                             COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP


                                                _____
                                                SAMUEL H. RUDMAN

                                                SAMUEL H. RUDMAN
                                                DAVID A. ROSENFELD
                                                MARIO ALBA JR.
                                                58 South Service Road, Suite 200
                                                Melville, NY 11747
                                                Telephone: 631/367-7100
                                                631/367-1173 (fax)

                                                Attorneys for Plaintiff

- 17 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF ST. CLAIR SHORES POLICE AND FIRE RETIREMENT SYSTEM ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    (a)    Plaintiff has been appointed to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*In re SINA Corporation Sec. Litig.*, No. 1:05-CV-02154-NRB (S.D.N.Y.)
*Tsirekidze v. Syntax-Brillian Corp., et al.*, No. 2:07-cv-02204-JWS (D. Ariz.)

      (b)    Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

*Kadel v. HomeBanc Corp., et al.*, No. 07-61753 (S.D. Fla.)

      (c)    Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

GILDAN

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _LY_ day of ___MAY___, 2008.

CITY OF ST. CLAIR SHORES POLICE
AND FIRE RETIREMENT SYSTEM

By: _____

Its: ___CHAIRMAN_____

- 2 -

GILDAN

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 01/15/2008 | 2,300 | $37.48 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 04/02/2008 | 25 | $38.16 |